UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAMBIZ FATTAHI,<br>  2017 North Utah Street<br>  Arlington, VA 22207,<br><br>           Plaintiff,<br><br>v.<br><br>GEORGETOWN UNIVERSITY,<br>  Serve: John J. DeGioia, President<br>           37th & O Street, N.W.<br>           Washington, D.C., 20057<br><br>Darryl Harrison<br>Director, Department of Public Safety<br>Georgetown University<br>Village C, West Wing<br>Washington, DC 20057<br><br>Sergeant Winfred Walton<br>5207 York Road<br>Baltimore, MD 21212<br><br>Officer Randolph Christian<br> 710 North Wayne Street<br>Arlington, VA 22201,<br><br>           Defendants. | Civil Action No. _____<br>Jury Demand |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE,
AND MONETARY RELIEF AND JURY DEMAND**

(Police misconduct and violation of Constitutional, statutory, and common law rights)

Plaintiff, Kambiz Fattahi, by and through counsel, brings this action against Georgetown University and three of its employees seeking relief for injuries he has sustained as a result of the violation of his Fourth and Fourteenth Amendment rights, discriminatory treatment in a public accommodation, and false imprisonment. Plaintiff alleges the following:

1. On May 18, 2007, Plaintiff, a dual citizen of the United States and Iran, went to the graduation ceremony at McDonough Gymnasium on the campus of Georgetown University, where he was, and still is, enrolled as a graduate student. Mr. Fattahi carried with him his backpack, his cell phone, and a box of cookies to give to a friend who was graduating. As he sat and watched the graduation speakers, a uniformed, sergeant of the Georgetown University Department of Public Safety interrupted and insisted that he leave the ceremony and step into the hallway because he was "making some people nervous." The sergeant, Defendant Winfred Walton, and a second officer, Defendant Randolph Christian, surrounded Mr. Fattahi in the hallway. Although it quickly became apparent that the officers had no probable cause or even reasonable suspicion that Mr. Fattahi had done anything wrong or posed any danger, the officers detained him at length, and questioned and remarked on their real subject of interest, his national origin. Upon later investigation of the incident, Georgetown asserted that its officers had done nothing wrong and had acted consistent with its policies. This action followed.

## JURISDICTION AND VENUE

2. This court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because claims in this civil action arise under the Fourth and Fourteenth Amendments of the United States Constitution, and under 28 U.S.C. § 1343 because claims in this civil action arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1367, this court

has pendant jurisdiction over Mr. Fattahi's claim of false imprisonment and his District of Columbia Human Rights Act claims of discriminatory treatment in a public accommodation, because these claims arise from a common nucleus of operative fact and should reasonably be tried in the same judicial proceeding as the federal claims.

3. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b).

## PARTIES

4. Kambiz Fattahi ("Plaintiff" or "Mr. Fattahi") is a citizen of Virginia who resides at 2017 North Utah Street, Arlington, VA 22207. Plaintiff was born in Iran and holds dual citizenship in Iran and the United States. Plaintiff is currently a third year graduate student at Georgetown University.

5. Defendant Georgetown University ("Georgetown" or the "University") is a domestic non profit corporation organized and operating under the laws of the District of Columbia. Its headquarters is at 37th and O Street, NW, Washington, DC 20057.

6. Defendant Darryl Harrison, at all relevant times, was the Director of Georgetown's Department of Public Safety ("DPS"). Defendant Harrison is effectively the police chief of Georgetown Un and had supervisory responsibility over Defendants Walton and Christian.

7. Defendant Winfred Walton is a resident of Maryland and at all relevant times was a Sergeant in Georgetown University's DPS and, on information and belief, a Special Police Officer under District of Columbia law. Defendant Walton is sued in his individual capacity.

8. Defendant Randolph Christian is a resident of Virginia and at all relevant times was an Officer in Georgetown University's DPS and, on information and belief, a Special Police

3

Officer under District of Columbia law. Defendant Christian is sued in his individual capacity.

## FACTUAL ALLEGATIONS

9.   On May 18, 2007, the Plaintiff, Kambiz Fattahi, attended commencement in McDonough Gymnasium to honor a friend who was graduating. He carried a backpack to hold his cell phone and a box of cookies for his friend.

10.   Mr. Fattahi was born in Iran and holds dual citizenship in Iran and the United States. His national origin is Iranian and his race is Persian. Plaintiff came to the United States in 2001 and received an undergraduate degree from George Washington University in May 2005. In August 2005, Mr. Fattahi matriculated at Georgetown University for graduate work in the Security Studies Program. Mr. Fattahi is currently in his third and final year at Georgetown.

11.   In addition to attending school, Mr. Fattahi works as a journalist for the BBC's World Service-Persian ("BBC-Persian"). As a journalist, Mr. Fattahi routinely interviews U.S. government officials including congressmen and their staff, as well as executive grade employees. All or nearly all of these interviews are in English. Mr. Fattahi also publishes in English for BBC World English language website and other media.

12.   Upon arriving at the graduation ceremony, Mr. Fattahi looked around for another friend that he had planned to meet there. After failing to locate that friend, he sat down in the front row of the spectator section. During the ceremony, Mr. Fattahi periodically checked his cell phone, expecting a call or message from the friend he was supposed to meet at the ceremony.

13.   On information and belief, the Georgetown security officers working at the ceremony did not search the bags of anyone entering the gym.

14.   Although he was wearing slacks and a button-down shirt, Mr. Fattahi looks, and

is, Middle-Eastern. Most of the people sitting around him appeared to be Caucasian. Shortly after the keynote speaker, historian Bernard Bailyn, finished speaking about freedom and democratic liberties, Defendant Sergeant Winfred Walton, a tall Georgetown security officer with a heavy, muscular build, dressed in what appeared to be a police uniform, approached Mr. Fattahi, stood directly in front of him, blocking his view of the ceremony, and told him to get up and follow him. Plaintiff believed he had no choice but to comply.

15. Defendant Walton led Plaintiff to a public hallway just outside the gymnasium. As they walked, Defendant Walton told Plaintiff that he was "making people nervous."

16. In the hallway, Defendant Christian, also heavily-built and uniformed, joined Defendant Walton. The two special police officers stood on either side of Mr. Fattahi in the hallway. Officer Christian blocked Mr. Fattahi's access to the building's doors to the outside, while Sergeant Walton blocked his exit back towards the graduation ceremony.

17. Defendant Walton asked Mr. Fattahi whether he was a student. Mr. Fattahi told them he was in fact a student. Defendants Walton and Christian demanded identification.

18. Plaintiff first provided his Georgetown identification card ("GoCard"), then his drivers' license, and finally his business card, which identifies him as a BBC-Persian reporter. Upon receiving the business card, Defendant Walton said, "you're from Persia, the Middle East" and began making additional sarcastic remarks about "Babylon and the Tigris River" being located in Persia. Mr. Fattahi stated that these sites were located in Iraq, not in Iran, and that there is no longer a country named Persia. Defendant Walton continued talking, telling Mr. Fattahi that he was a Vietnam veteran and might visit Persia someday.

19. At that point, Defendants Walton and Christian demanded to know what country

Mr. Fattahi was from. Mr. Fattahi replied that his national origin was irrelevant to their inquiry and that that it was illegal to inquire about it. The two officers then became visibly agitated and ordered Mr. Fattahi to keep his hands out of his pockets and not to cross his arms.

20. Defendant Harrison arrived to oversee Defendants Walton and Christian as they continued to detain Mr. Fattahi. Defendant Harrison had an opportunity to intercede, but instead acquiesced in and ratified the actions of Defendants Walton and Christian.

21. While continuing to detain Mr. Fattahi, Defendants Walton and Christian verified Mr. Fattahi's driver's license with Arlington County authorities and his student GoCard with Georgetown University administrators.

22. Then, after a lengthy interrogation of Plaintiff in the hallway, Defendants Walton and Christian asked to search Plaintiff's backpack, which he was still holding on his shoulder. Defendants Walton and Christian searched Plaintiff's bag and told him he could return to his seat.

23. Plaintiff asked Defendant Walton to return his BBC business card, but Defendant Walton refused, stating that he wanted to contact a "friend" at BBC.

24. When Plaintiff returned to his seat, he had already missed watching his friend receive her diploma. Defendants Walton and Christian continued to monitor Plaintiff in the ceremony, making him extremely uncomfortable and causing him to leave the ceremony early.

25. Plaintiff had originally planned to celebrate the graduation with a number of friends. Instead, he went home with a headache and stomachache caused by the incident. Since the incident, Mr. Fattahi has had recurring headaches and has suffered from a consistent feeling of depression.

26. As a result of his treatment by Georgetown authorities, Mr. Fattahi feels anxious and uncomfortable at the University, avoids going to the University except when necessary, and questions whether his presence on campus is welcomed and accepted by others in the University community.

27. Mr. Fattahi found it humiliating to be interrogated at length in a public space as others enjoyed the graduation ceremony nearby and now suffers from a sense of unease in public spaces on the Georgetown campus. He does not plan to attend his own Georgetown graduation ceremony in May 2008 because of his experience at Georgetown graduation in May 2007.

28. On May 19, 2007, Plaintiff filed a complaint with the DPS. At the DPS office, the Deputy Director for Public Safety asked Mr. Fattahi what he had done during the ceremony to attract the attention of Mr. Harrison and then informed Mr. Fattahi that the Department of Public Safety had received several complaints about him during the ceremony, prompting them to send over Defendants Walton and Christian to investigate. She said that members of the audience had complained that Mr. Fattahi was acting suspicious and opening his bag.

29. On May 22, 2007, a representative of the University interviewed Mr. Fattahi regarding the incident.

30. On May 25, 2007, consistent with the University's bias-related incident procedures, Mr. Fattahi submitted his complaint to the Office of Institutional Diversity, Equity, and Affirmative Action. Mr. Fattahi subsequently supplemented his incident report with additional facts.

31. In response to Mr. Fattahi's complaint, on July 17, 2007, the Vice President for Institutional Diversity and Equity at Georgetown, Rosemary Kilkenny, issued to Mr. Fattahi a

seven-page report dated July 12, 2007 that denied that the University, Defendants Walton and Christian, and the University's other officials had done anything improper. The report repeatedly asserted that the conduct of Defendants Walton, Christian and Harrison was consistent with official Georgetown policies.

32. The University's report further stated that Defendant Harrison directly ordered Defendants Walton and Christian by radio to detain Mr. Fattahi and that Director Harrison then proceeded to McDonough Gymnasium, where he conferred with Defendants Walton and Christian in person.

33. The report also stated that the hallway was an appropriate place to conduct the questioning of Mr. Fattahi, despite the public humiliation it caused him to suffer.

34. The report denied that Defendant Walton ever made any remarks about Babylon or the Tigris River.

35. The report stated that the officers only inquired about Mr. Fattahi's national origin to see if he needed a translator. Mr. Fattahi, however, is completely fluent in English, as the officers must have known from speaking to him before demanding to know his national origin.

36. The report claimed that the detention and investigation of Mr. Fattahi had been justified because, according to another, unidentified, audience member, Mr. Fattahi had looked around the room and put his hand inside his bag.

37. Citing University General Order 300.10.F.1.c for policy support, the report asserted that Defendants Walton and Christian merely sought a standard check of identification.

38. The report did not explain why a "standard" identification check extended beyond simply looking at Mr. Fattahi's student GoCard or why a "standard" identification check of a

registered Georgetown student extended for so long and included a call to the Arlington County government, interrogation by two police officers, and a search of his possessions.

39. On information and belief, Defendant Georgetown has a custom and practice of allowing its police officers, such as Defendants Walton and Christian, to exercise the power to detain members of the public after minimal training.

## LEGAL CLAIMS

Plaintiff incorporates the allegations of paragraphs 1 through 39 into each of the following nine legal claims.

## COUNT ONE
## UNLAWFUL DETENTION IN VIOLATION OF
## THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
## CONSTITUTION AND 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS

40. The Fourth and Fourteenth Amendments of the United States Constitution prohibit detention of an individual for investigatory purposes without sufficient cause. U.S. Const. Amend XIV; U.S. Const. Amend IV; 42 U.S.C. § 1983.

41. Defendants Walton and Christian acted on behalf of Georgetown and under color of state law, because they had state-granted powers to arrest pursuant to D.C. Code §§ 5-129.02, 23-582(a).

42. Defendants Walton and Christian seized Mr. Fattahi, restricted his freedom of movement, interrogated him in a public hallway at length, retained several of his forms of identification during the detention, and searched his possessions. In a final show of official authority, after searching Mr. Fattahi's bag, Sergeant Walton refused to return his business card and implied that he would contact Mr. Fattahi's employer and investigate Mr. Fattahi further.

43. Mr. Fattahi reasonably believed that he had to obey Georgetown's police offers and submit to this assertion of official authority.

44. Defendants Walton and Christian had no warrant, probable cause, or reasonable suspicion for these actions.

45. Defendants' actions constitute unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution, under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

46. Defendants' actions were unreasonable, humiliating and discriminatory.

47. Defendants' actions damaged Plaintiff's reputation and caused him embarrassment, humiliation and indignity.

48. Defendants' violation of the Fourth and Fourteenth Amendments caused Plaintiff to suffer headaches, a stomach ache, depression, and emotional distress.

49. Defendant Georgetown ratified the actions of Defendants Walton, Christian, and Harrison by stating that they had done nothing wrong and had acted consistent with Georgetown's policies.

COUNT TWO
RACIAL PROFILING IN VIOLATION OF
THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
AND 42 U.S.C. § 1983
AGAINST ALL DEFENDANTS

50. The Fourteenth Amendment prohibits officers from engaging in investigative surveillance based solely on impermissible factors such as race or national origin. U.S. Const. Amend XIV; 42 U.S.C. § 1983.

51. Defendants Walton and Christian acted on behalf of Georgetown and under color

of state law because they had state-granted powers to arrest pursuant to D.C. Code §§ 5-129.02, 23-582(a).

52. Plaintiff looks and is Middle-Eastern. His race is Persian and his national origin is Iranian.

53. On information and belief, Plaintiff was the only person of Middle-Eastern appearance seated in this part of the gymnasium, and was surrounded primarily by Caucasian families and groups.

54. When Defendant Walton seized him, Plaintiff was engaging in activities that were typical for an audience member at the graduation ceremony: listening to the speakers, gazing around the gymnasium, holding a back pack, and checking his cell phone for messages or calls.

55. Defendants Walton and Christian seized Mr. Fattahi, restricted his freedom of movement, interrogated him at length in a public hallway, retained several of Mr. Fattahi's forms of identification during the detention, and searched his possessions. In a final show of official authority, after searching Mr. Fattahi's bag, Sergeant Walton refused to return his business card, despite Mr. Fattahi's request that he do so and implied that he intended to call Mr. Fattahi's employer and investigate him further.

56. When Defendants Walton and Christian interrogated Mr. Fattahi about his national origin, and then mocked his BBC-Persian business card, they confirmed that their concern was not with his conduct but rather with his race and national origin.

57. The totality of the circumstances leading up to Mr. Fattahi's detention established only inchoate or unparticularized suspicion based almost entirely, if not entirely, on racial bias, not the "specific, objective facts and rational inferences" that would justify detaining Mr. Fattahi.

58. Defendants' actions constitute investigative surveillance based solely on the impermissible factors of race and national origin in violation of the Fourteenth Amendment to the United States Constitution.

59. Defendants' actions were unreasonable, humiliating and discriminatory, damaged Plaintiff's reputation and caused him embarrassment, humiliation and indignity.

60. Defendants' violation of the Fourteenth Amendment caused Plaintiff to suffer headaches, a stomachache, depression, and emotional distress.

61. Defendant Georgetown ratified the actions of Defendants Walton, Christian, and Harrison by stating that they had done nothing wrong and had acted consistent with Georgetown's policies.

## COUNT THREE
## CONSPIRACY IN VIOLATION OF
## THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
## CONSTITUTION AND 42 U.S.C. § 1985
## AGAINST ALL DEFENDANTS

62. Defendants Georgetown University, Harrison, Walton and Christian, combined together, agreed and conspired with each other, and with various other officers and agents of Defendant Georgetown to deny Plaintiff Fattahi his civil rights.

63. Defendants committed overt unlawful acts in furtherance of the conspiracy as described above, including choosing to remove Plaintiff from the graduation ceremony without probable cause or reasonable suspicion and doing so based upon his race and national origin.

64. Through the conspiracy as described above, and through overt acts committed in furtherance of that conspiracy, Defendants directly and proximately caused Plaintiff Fattahi to suffer humiliation and emotional pain and suffering.

## COUNT FOUR
## RACE DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION
## IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.31(1)
## AGAINST ALL DEFENDANTS

65. The District of Columbia Human Rights Act prohibits denying any person the full and equal enjoyment of facilities in any place of public accommodations wholly or partially because of race. D.C. Code § 2-1402.31(a)(1).

66. The graduation ceremony in McDonough Gymnasium was open to the public and was a place of public accommodation.

67. Georgetown unlawfully denied Mr. Fattahi's the full and equal enjoyment to the graduation ceremony in McDonough Gymnasium because of his race (Persian).

68. Defendants' actions constitute race discrimination in public accommodations.

69. Defendants' actions were willful, reckless, and malicious.

70. Defendants' actions damaged Plaintiff's reputation and caused him embarrassment, humiliation and indignity.

71. Defendants' violation of the District of Columbia Human Rights Act caused Plaintiff to suffer headaches, a stomach ache, depression, and emotional distress.

## COUNT FIVE
## RACE DISCRIMINATION IN AN EDUCATIONAL INSTITUTION
## IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.41(1)
## AGAINST DEFENDANT GEORGETOWN UNIVERSITY

72. The DCHRA prohibits denial by an educational institution of the full and equal enjoyment of facilities, programs, and activities, wholly or partially because of race. § 2-1402.41(1). Defendant Georgetown is an educational institution. Defendant Georgetown restricted Mr. Fattahi's access to the graduation ceremony in McDonough Gymnasium because

of his race (Persian), causing him damage to reputation, embarrassment, humiliation and indignity.

## COUNT SIX
### NATIONAL ORIGIN DISCRIMINATION IN A PLACE OF PUBLIC ACCOMMODATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.31(1) AGAINST ALL DEFENDANTS

73. The DCHRA prohibits denying any person the full and equal enjoyment of facilities in any place of public accommodations wholly or partially because of national origin. § 2-1402.31(1). Defendants denied Plaintiff the full and equal enjoyment of the graduation ceremony in McDonough Gymnasium wholly, or at least partially, because of his national origin, causing him damage to reputation, embarrassment, humiliation and indignity.

## COUNT SEVEN
### NATIONAL ORIGIN DISCRIMINATION IN AN EDUCATIONAL INSTITUTION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.41(1) AGAINST DEFENDANT GEORGETOWN UNIVERSITY

74. The DCHRA prohibits denial by an educational institution of the full and equal enjoyment of facilities, programs, or activities, wholly or partially because of national origin. § 2-1402.31(1). Defendant Georgetown is an educational institution. Defendant Georgetown denied Plaintiff the full and equal enjoyment of the graduation ceremony in McDonough Gymnasium wholly, or at least partially, because of his national origin, causing him damage to reputation, embarrassment, humiliation and indignity.

## COUNT EIGHT
### AIDING AND ABETTING IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT, D.C. CODE § 2-1402.62 AGAINST DEFENDANTS HARRISON, WALTON, AND CHRISTIAN

75. Under the D.C. Human Rights Act, it is "an unlawful discriminatory practice for

any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so." D.C. Code Ann. § 2-1402.62.

76. Defendants Harrison, Walton, and Christian aided and abetted defendant Georgetown in discriminating against Mr. Fattahi based upon his national origin.

77. The conduct of Defendants Harrison, Walton and Christian was a direct and proximate cause of the injuries and damages to Mr. Fattahi, including pain and suffering, emotional distress, and humiliation.

### COUNT NINE
### COMMON LAW FALSE IMPRISONMENT
### AGAINST ALL DEFENDANTS

78. District of Columbia law prohibits false imprisonment, the restraint by one or more persons of the physical liberty of another without consent or legal justification.

79. Defendant Walton, on behalf of Defendant Georgetown, demanded that Mr. Fattahi leave the graduation ceremony and accompany him to another location, where he and Defendant Christian proceeded to detain and question Mr. Fattahi.

80. Defendants did not have Mr. Fattahi's consent.

81. Defendants had no legal justification for their restraint of Mr. Fattahi.

82. Defendants' actions constitute false imprisonment in violation of District of Columbia law.

83. Defendants' actions were willful, reckless, and malicious.

84. Defendants' actions damaged Plaintiff's reputation and caused him embarrassment, humiliation and indignity.

85. Defendants' violation of the District of Columbia law caused Plaintiff to suffer

headaches, a stomach ache, depression, and emotional distress.

NOW WHEREFORE Plaintiff prays this court for the following relief:

A.  A declaratory judgment that Defendants' detention of Plaintiff violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title II of the Civil Rights Act of 1964, the District of Columbia Human Rights Act, DC Code § 2-1402 et seq., and District of Columbia common law;

B.  An injunction proscribing future discrimination in public accommodations by Defendant, requiring revision of the University's institutional guidelines for avoiding racial discrimination in campus security, including racial profiling and race or national origin-based harassment, and requiring training for all security employees and contract security workers in implementation and enforcement of these policies;

C.  An award of compensatory damages to Plaintiff from Defendants in an amount to be determined by a jury;

D.  An award of punitive damages to Plaintiff from Defendants in an amount to be determined by a jury;

E.  An award to Plaintiff of reasonable attorneys' fees and costs, including expert witness fees; and

F.  All other relief this Court deems just.

Respectfully submitted,

/s/
_____
David Wachtel  DC Bar # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorney for Kambiz Fattahi

DATED: April 29, 2008

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAMBIZ FATTAHI,<br>  2017 North Utah Street<br>  Arlington, VA 22207,<br><br>           Plaintiff,<br><br>     v.<br><br>GEORGETOWN UNIVERSITY, et al.<br><br>           Defendants. | Civil Action No. _____<br>Jury Demand |

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

_____
David Wachtel  DC Bar # 427890
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Attorney for Kambiz Fattahi

DATED: April 29, 2008

18

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Kambiz Fattahi

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Arlington, VA
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
Georgetown University, Darryl Harrison, Sergeant Winfred Walton, Officer Randolph Christian

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David Wachtel, Esq.
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009
(202) 745-1942

Case: 1:08-cv-00744
Assigned To : Friedman, Paul L.
Assign. Date : 4/29/2008
Description: Civil Rights-Non-Employ.

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊗ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
☐ 410 Antitrust

### ○ B. *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. *General Civil (Other)*   OR   ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

④

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊙ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. § 1983, 42 U.S.C. § 1985. Violation of 4th and 14th amendment, discrimination in public accommodation, and false imprisonment

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ No Less than 75,000.00    Check YES only if demanded in complaint    JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE April 29, 2008    SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.